BLACKSHEAR MANUFACTURING COMPANY *v.* PERRY.
BRANCH *v.* BLACKSHEAR MANUFACTURING COMPANY.
TRUETT *v.* BLACKSHEAR MANUFACTURING COMPANY.

No. 9535. NOVEMBER 16, 1933. REHEARING DENIED DECEMBER 28, 1933.

24

*S. F. Memory, J. B. Moore, Gordon Knox,* and *S. F. Memory Jr.,* for plaintiff.

*Highsmith & Highsmith,* for defendants.

BECK, P. J. ■ In view of all the provisions imposing penalties, contained in the act entitled "An act to further regulate the sale, inspection, and distribution of commercial fertilizer and fertilizer materials in the State of Georgia," etc., approved August 24, 1929 (Ga. L. 1929, p. 228), we are of the opinion that the first question should be answered in the negative. Section 9 of the act is as follows: "Any fertilizer or fertilizer material sold in this State without compliance with the requirements of the law, any fertilizer which upon analysis by the State Chemist shows a shortage in any

one plant food of ten per cent. or more, and any fertilizer which upon analysis under direction of the State Chemist shows a shortage in commercial value below the guarantee of five per cent. or more shall be subject to a penalty of twenty-five per cent. of the purchase-price, plus the actual shortage in commercial value. These penalties shall be in lieu of all other penalties now provided by law, and shall not be cumulative." The provision as to the penalties is applicable to all fertilizer or fertilizer material sold in this State "without compliance with the requirements of the law." Section 9 also provides penalties for shortage in plant food or commercial value. The language of the act, "These penalties shall be in lieu of all other penalties now provided by law, and shall not be cumulative," might appear·to be in conflict with another section of the same act; that is, section 12, where it is further enacted that "every manufacturer, mixer, jobber, or dealer violating any of the provisions of this act or the fertilizer laws of this State shall be guilty of a misdemeanor, and punished" for that crime. But it is not necessarily in conflict with that section, for the penalties provided in section 9 of the act can and should be construed, in view of the other provisions of the act, as referring to penalties other than criminal penalties and liabilities; and section 12 should then be treated and construed as adding a penalty of a criminal nature. To construe section 9 otherwise than we have done would inflict upon the manufacturer or seller the loss of the entire purchase-price and the 25 per cent. penalty, "plus the actual shortage in commercial value," and, in addition to that, subject any manufacturer or dealer to punishment as for a misdemeanor. A law providing penalties should not, by construction, be given so broad and sweeping an effect; and after careful consideration of the act we have reached the conclusion that question No. 1 should be answered in the negative.

■ As to question 3, which we consider before considering question 2, we are of the opinion that section 2 of the act under consideration does not apply to manufacturers of fertilizer, where such manufacturers have complied with section 1 of the act by registering, etc. That section reads as follows: "That on and after the passage of this act every manufacturer and mixer selling or offering for sale within the State any fertilizer or fertilizer material shall first file annually with the Commissioner of Agriculture, upon

forms supplied by the commissioner for that purpose, a registration of each brand of fertilizer or fertilizer material to be offered for sale, giving the name and address of the manufacturer or mixer, together with the name of each place at which they may desire to do business in this State, the guaranteed analysis thereof, stating the sources from which the phosphoric acid, nitrogen, and potash are derived and giving the percentage of organic nitrogen, the percentage of inorganic nitrogen and the percentage of the total amount of nitrogen, and stating what proportion of the potash is sulphate, if any, and that for the purpose of this act organic nitrogen shall be that derived from animal or vegetable matter, and all other nitrogen shall be classed as inorganic. Such application to be accompanied by a fee of five dollars for each brand of fertilizer or fertilizer material which they may desire to sell." It appears from a reading of this section that it deals fully with the requirements imposed by law upon manufacturers of fertilizer. It requires them to file annually with the Commissioner of Agriculture a registration of each brand of fertilizer or fertilizer material to be offered for sale, and sets forth minutely other conditions with which the manufacturer must comply. It sets forth in a comprehensive form what must be done by the manufacturer that all purchasers of fertilizer may be protected; and requires that the application must be accompanied by a fee of five dollars for each brand of fertilizer which they shall desire to sell. These requirements are set forth in detail and are comprehensive, and, it would seem, exhaustive of the terms and conditions to be imposed upon the manufacturers.

Having answered that section 2 does not apply to manufacturers of fertilizer, where such manufacturers have complied with section 1 of the act referred to, it is unnecessary to give further answer to question No. 2.    *All the Justices concur.*